FILED

07/19/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0748

DA 15-0748

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 176

IN RE THE MARRIAGE OF:

TAMMY WAGENMAN,

       Petitioner and Appellant,

   v.

MATT WAGENMAN,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DR 12-0186
                    Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Michelle R. Lee, Lee Law Firm, LLC, Billings, Montana

       For Appellee:

            Katherine Delaney Berst, K.D. Berst Law, Billings, Montana

                               Submitted on Briefs:  May 11, 2016

                                        Decided:  July 19 2016

Filed:

                                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Tammy Wagenman ("Tammy") appeals the final judgment of the Montana Thirteenth Judicial District, Yellowstone County, denying her Cross-Petition to Amend the parties' Findings of Fact, Conclusions of Law and Final Decree of Dissolution.  We reverse and remand.

## ISSUES

¶2     Appellant raises two issues on appeal which we address as follows:

*1. Whether the District Court erred when it denied Tammy's Motion to Amend the Findings of Fact, Conclusions of Law, and Final Decree of Dissolution pursuant to M. R. Civ. P. 60(b)(6).*

*2. Whether the District Court erred when it awarded attorney fees to Matt Wagenman.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Matt Wagenman ("Matt") and Tammy were married on March 22, 1996.  During nearly sixteen years of marriage the parties acquired a marital home and mortgage along with other personal property and debts.  On February 17, 2012, Matt and Tammy filed a pro se Joint Petition for Dissolution to dissolve the marriage and divide up their property and debt.  As pro se parties, the parties utilized a "Joint Petition for Dissolution, no Children" form approved by the Montana Supreme Court.  In the "Real Property" section of the petition the parties indicated that they were the owners of record of real property, their marital home, located at 5611 Haynes Road, Shepherd, Montana.  At section 9(b) of the Petition, they stated that their real property should be distributed as described in

2

Exhibit A, which they attached to their Petition. The parties signed the Petition and filed the documents with the District Court on February 17, 2012, with Exhibit A attached.

¶4 Exhibit A is a property settlement agreement between the parties. The agreement is signed and dated September 1, 2011, and contains specific details agreed upon by the parties to settle their real property claims, payments owed to the IRS, and other debts. The agreement also included plans to refinance car loans for Matt's Corvette and Tammy's Camaro from joint to individual loans. The real property division made allowances for Matt to stay in the marital home, so long as he made payments in a timely manner. The agreement also required Matt to refinance the home within one year and to remove Tammy from the mortgage or the property would be listed for sale. Upon sale or refinancing of the home, the agreement provided that each party would receive 50% of the equity. According to the Petition, the home was valued at $205,000 and the mortgage balance on the property was $112,000.

¶5 After filing the Petition, Matt and Tammy appeared in District Court on March 13, 2012. Following a two-minute hearing, the court granted the dissolution of the marriage. The court record contains five documents as part of the dissolution, including the parties' Petition with Exhibit A attached and the Final Decree granting the dissolution dated the day of the hearing. In the Final Decree, the court filled in a Montana Supreme Court approved decree form but did not enter the property and debt distribution according to Exhibit A, nor did it incorporate Exhibit A into the Decree. Instead, the court distributed the marital home to Matt and entered a mortgage debt to Matt in the amount of $180,000, an amount unsubstantiated in the record.

3

¶6     Over the next two years, the parties took action in accordance with their settlement agreement as they disentangled their assets. During this time, the parties communicated in regard to refinance of the house and Tammy's eventual receipt of her portion of the marital home equity. Because Matt had not sold the home or paid Tammy the equity after two years, on May 20, 2014, Tammy contacted an attorney who sent a letter to Matt indicating she was going to proceed with the property distribution in accordance with the Decree. Matt and Tammy subsequently agreed on an extension for Matt to comply with the provisions of the property distribution. Matt hired an attorney in August 2014, and it was then that both parties discovered the District Court failed to incorporate Exhibit A into the Decree.

¶7     Upon discovering that Exhibit A was not incorporated into the Decree, Matt changed his position from honoring the agreement with Tammy to asking Tammy to file a quitclaim deed on her interest in the house pursuant to the Decree. On September 22, 2014, Matt's counsel filed a Motion to Compel, requesting that the court order Tammy to quitclaim her interest in the home based on the Final Decree. Matt also requested reasonable attorney fees in connection with the motion. On September 30, 2014, Tammy responded to the Motion to Compel by filing a Cross-Petition to Amend the Findings of Fact, Conclusions of Law, and Final Decree of Dissolution. She argued that the Decree should be amended pursuant to M. R. Civ. P. 60(b)(6) to incorporate Exhibit A as the parties originally requested. The District Court held a hearing on October 31, 2014, and Matt argued that he did not sign anything in the file, and alleged that Tammy had forged his name on the documents. After receiving supplemental briefing on the issues, the

4

court denied Tammy's Rule 60(b)(6) Motion to Amend the pleadings, and granted Matt's Motion to Compel and awarded Matt attorney fees. Tammy appealed to this Court on May 13, 2015, and this Court dismissed the appeal without prejudice pending the District Court's determination of attorney fees. The Order approving stipulation regarding attorney fees was filed on October 26, 2015. Tammy appeals.

## STANDARD OF REVIEW

¶8 The standard of review of a district court's ruling on a motion pursuant to M. R. Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the Rule 60(b) motion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. In cases not involving a default judgment, we review a district court's denial of a M. R. Civ. P. 60(b) motion for abuse of discretion. *Tanascu v. Tanascu*, 2014 MT 293, ¶ 9, 377 Mont. 1, 338 P.3d 47 (citation omitted). A district court abuses its discretion when "it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Essex*, ¶ 19. "We review a district court's conclusions of law regarding a division of marital assets to determine whether they are correct." *In re Marriage of Bushnell*, 2014 MT 130, ¶ 7, 375 Mont. 125, 328 P.3d 608.

## DISCUSSION

¶9 *1. Whether the District Court erred when it denied Tammy's Motion to Amend the Findings of Fact, Conclusions of Law, and Final Decree of Dissolution pursuant to M. R. Civ. P. 60(b)(6).*

¶10 Upon motion, the Court may relieve a party from a final judgment in certain circumstances. M. R. Civ. P. 60(b) provides:

5

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) *any other reason justifying relief from the operation of the judgment.*

(Emphasis added.).

¶11 We have determined that a motion under Rule 60(b)(6) "must be more than a request for rehearing, or a request for the district court to change its mind; it must be shown that something prevented a full presentation of the cause or an accurate determination of the merits that for reasons of fairness and equity redress is justified." *Orcutt v. Orcutt*, 2011 MT 107, ¶ 11, 360 Mont. 353, 253 P.3d 884. We have also concluded that Rule 60(b) "is designed to be applied primarily as an exception to the finality of a judgment where a party was wronged through no fault of its own." *In re Marriage of Hopper*, 1999 MT 310, ¶ 29, 297 Mont. 225, 991 P.2d 960.

¶12 "A successful Rule 60(b)(6) motion requires that the movant demonstrate each of the following elements: (1) extraordinary circumstances; (2) the movant acted to set aside the judgment within a reasonable period of time; and (3) the movant was blameless." *Essex*, ¶ 25 (citations omitted). In this case, the District Court applied the *Essex* test and found no extraordinary circumstance to support Tammy's motion. The

6

court reasoned that because Tammy was present when the court filled in the provisions regarding the marital home on the decree, the court received input from the parties and Tammy was aware of the court's determination. The court also concluded that waiting two and one half years to move to set aside the final judgment was not acting within a reasonable time. The court concluded that Tammy was not blameless because she failed to read the Final Decree until the fall of 2014 in spite of her frustrations over Matt's failure to comply with Exhibit A.

¶13 Tammy asks the Court to modify the Final Decree to incorporate Exhibit A as the parties initially intended. She contends that the record demonstrates that the *Essex* "extraordinary circumstance" is the District Court's failure to incorporate Exhibit A to the Final Decree, which is a violation of § 40-4-201, MCA, and an incorrect conclusion of law. Matt counters with several arguments, including that Exhibit A was only a preliminary negotiation between the parties, that the Joint Petition with Exhibit A cannot be considered a final contract between Tammy and Matt, and that neither party complied with the majority of the provisions in Exhibit A.

¶14 The public policy of the State of Montana is to promote the amicable settlement of disputes between parties to a marriage. Section 40-4-201(1), MCA; *Tanascu*, ¶ 14. For this reason, parties in a marital dissolution may enter into a written settlement agreement dividing any property owned by either spouse. Section 40-4-201(1), MCA; *Tanascu*, ¶ 14. The district court must honor the separation agreement statutes which clearly indicate that the terms of a separation agreement are binding upon a district court unless

the court finds the separation agreement to be unconscionable. Section 40-4-201(2), MCA; *Tanascu*, ¶ 14.

¶15 The District Court determined in the Montana Supreme Court-approved Final Decree form that the parties' division of property was reasonable and should be enforced. On the form, the District Court concluded as a matter of law that the "[p]etitioner's proposed division of property and debts is equitable," and that "the relief requested should be granted." These conclusions support Tammy's argument that Exhibit A should have been incorporated into the Final Decree. During the short hearing, the District Court filled in the form order. In the real property provision, the court indicated that Matt would receive all of the real estate and attendant debt, while Tammy would quitclaim her interest. The District Court then left blank all spaces for division or settlement of other property including vehicles and debt. The only proposal for division of the remainder of property and debt was contained in their Joint Petition for Dissolution and Exhibit A, which addressed the division of those other items of property between the parties and was made part of the court record. The court's action of leaving most of the form blank lends significant support to Tammy's argument that the court was relying upon Exhibit A to equitably settle the marital property, because the Final Decree is incomplete without its detailed provisions.

¶16 In addition, because the court failed to incorporate Exhibit A, the court failed to comply with § 40-4-201(4)(a)-(b), MCA, which requires the decree to include the terms for settlement of property and debts. We have previously determined that a district court cannot substitute its particular division of property in lieu of the parties' division unless

8

the court finds the agreement to be unconscionable. *In re Marriage of Blankenship*, 210 Mont. 31, 35, 682 P.2d 1354, 1356 (1984). In *Blankenship*, the parties sought to divide a particular piece of land, and the court substituted its own boundary line in lieu of the parties' proposed subdivision without making a finding of unconscionability. *Blankenship*, 210 Mont. at 35, 682 P.3d at 1356. We concluded the court had no authority to do so and reversed.

¶17 As we stated in *Blankenship*:

> Section 40-4-201, MCA, sets forth certain criteria that must be present before a court may disregard a separation agreement. Subparagraph two of the statute states that the terms of the agreement are binding on the court unless it finds the agreement unconscionable. If the court does find the agreement unconscionable, then the court may make its own disposition of the property. Section 40-4-201(3), MCA.

*Blankenship*, 210 Mont. at 35, 682 P.3d at 1356.

¶18 Here, the court created its own division of the only property of value in the marriage, giving 100% of the marital home to Matt instead of a 50% equity division to each party under the settlement agreement. Because the District Court did not incorporate Exhibit A into the parties' separation agreement without providing a determination of unconscionability or other provision for an equitable division of the marital property, the court failed to comply with the separation agreement statute § 40-4-202, MCA. Similar to *Blankenship*, we conclude that, absent a finding of unconscionability it was legal error for the District Court to substitute its own property settlement in place of the parties' agreement. Because the District Court neither found unconscionability nor followed the parties' property settlement agreement as set forth in

Exhibit A, Tammy was wronged through no fault of her own. *Marriage of Hopper*, ¶ 29. Accordingly, under the first *Essex* factor, we conclude the District Court's legal error created the "extraordinary circumstances" that provides grounds for Tammy's motion to amend. *Essex*, ¶ 25.

¶19     The second element under the *Essex* test requires that the movant must act to set aside the judgment within a reasonable time. *Essex*, ¶ 25. Tammy argues her motion was made within a reasonable time because her failure to act earlier stemmed from a belief that the court had incorporated Exhibit A into the parties' settlement, and upon the discovery of the error by Matt's counsel, she immediately filed a motion to amend the settlement. In *Bartell v. Zabawa*, 2009 MT 204, ¶ 34, 351 Mont. 211, 214 P.3d 735, we determined that filing a motion to set aside 10 days after discovery of the error entered against Zabawa and his insurer six years after the underlying accident was "within a reasonable amount of time" because Zabawa had proceeded with diligence. Similarly, we conclude here that Tammy acted within a reasonable time as she moved immediately, within 8 days, to amend the judgment against her upon the discovery of the District Court's error.

¶20     Finally, we conclude that Tammy is blameless for failing to discover the issue, as the error was not due to her actions. Because the court had a duty to inquire about the equity of the agreement, we do not fault Tammy as a pro se litigant who had little previous contact with the court system and who was relying on the marital dissolution statutes, and the court, to uphold their agreement.

¶21 Accordingly, the District Court's subsequent decision to deny her Rule 60(b)(6) motion was an abuse of discretion. The court's legal error prevented an "accurate determination of the merits" regarding the property settlement agreement; thus, we reverse the District Court's denial of Tammy's Motion to Amend under Rule 60(b)(6), because it was an abuse of the court's discretion.

¶22 *2. Whether the District Court erred when it awarded attorney fees to Matt Wagenman.*

¶23 Under § 40-4-110(1), MCA, a court "from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4." The District Court awarded attorney fees to Matt without a consideration of financial resources of the parties. We have determined that the court reached the incorrect result in its denial of Tammy's Rule 60(b)(6) amendment. Thus, we find that the court's award of attorney fees was incorrect. Accordingly, we reverse the District Court's award of attorney fees.

## CONCLUSION

¶24 The District Court erred by failing to incorporate the parties' property settlement, detailed in Exhibit A, into the Final Decree. The District Court abused its discretion when it denied Tammy's Rule 60(b)(6) motion to amend the Final Decree to incorporate Exhibit A. Further, the District Court improperly awarded attorney fees to Matt. Accordingly, we reverse and remand for further proceedings on the property settlement agreement.

11

/S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE