FILED

11/24/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0010

DA 20-0010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 294N

IN RE THE MARRIAGE OF:

DAWN E. PHILLIPS,

      Petitioner and Appellee,

  and

FRANK M. BUCKNUM,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                     In and For the County of Lake, Cause No. DR-18-104
                     Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Quentin M. Rhoades, Rhoades, Siefert & Erickson PLLC, Missoula,
                Montana

        For Appellee:

                Gregory A. McDonnell, Thomas C. Orr Law Offices, P.C., Missoula,
                Montana

                                Submitted on Briefs:  September 23, 2020

                                     Decided:  November 24, 2020

Filed:

                        _____
                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Frank Bucknum appeals from an Entry of Final Decree, Finding of Contempt, and Order of Attorney Fees entered on November 14, 2019 by the Twentieth Judicial District Court, Missoula County. We affirm.

¶3 Dawn Phillips and Bucknum were married on October 2, 2004, in Missoula, Montana. They entered into a premarital agreement the day before their wedding on October 1, 2004, and subsequently amended the premarital agreement on August 28, 2006. The Premarital Agreement and the First Amendment to Premarital Agreement included the disclosure of the parties' respective assets and provided for both disclosure obligations as well as distribution of those assets in the event of a dissolution. On September 24, 2018, Phillips filed a Petition for Dissolution of Marriage. The petition noted the existence of the Premarital Agreement and subsequent amendment but claimed both were null and void due to "intimidation, misrepresentation, deceit, and fraud." Bucknum denied such allegations and asserted that the Premarital Agreement and subsequent amendment should govern the division of the parties' accumulated property and debts.

2

¶4     On February 15, 2019, Phillips and Bucknum attended a master-supervised settlement conference and entered into a Marital Property Settlement Agreement (MPSA). Bucknum appeared by video conference from Canada and independent counsel represented him in the negotiation and preparation of the MPSA.  Bucknum maintains that he was suffering from pneumonia during the conference.  Phillips appeared in-person and was also represented by counsel.  As part of the MPSA, both parties acknowledged that they "intend[ed] through th[e] agreement to accomplish a fair and equitable distribution of their marital estate . . .;" and they "ha[d] carefully and thoroughly read and approved th[e] agreement in its entirety and . . . entered into negotiation and preparation of th[e] agreement with full knowledge and understanding of its consequences."   This included an acknowledgement that the MPSA was fair and equitable and that it would be incorporated into the Final Decree of Dissolution of Marriage.  The MPSA also contained the following provision:

> This agreement is complete and contains all understandings and agreements between the parties with regard to the issues set forth herein.  No written or oral promises, understandings, representation, warranties, covenants, *agreements*, or any other undertakings exist between the parties other than those expressly set forth herein.  No oral statement or written matter extrinsic to this agreement shall have any force or effect.

(Emphasis added.) By signing, the parties agreed that the MPSA was "effective and enforceable immediately upon the execution . . . by both parties."  Bucknum, Phillips, and their attorneys signed the MPSA that day, and it was filed with the District Court on February 25, 2019.

¶5      On May 16, 2019, Bucknum's counsel requested to withdraw from the proceedings based on a "major break down in attorney client communication . . . ." The District Court granted the motion and Phillips issued a Uniform District Court Rule 10 Notice to Bucknum notifying him that the court had granted his attorney's request to withdrawal. On May 23, 2019, Phillips requested the District Court order Bucknum to comply with the MPSA and hold Bucknum in contempt for, *inter alia*, canceling Phillips' insurance coverage on the vehicle Phillips had been operating and the premises in which she had been living, and failing to pay previously-awarded attorney fees and a temporary maintenance payment. Bucknum failed to respond to the Rule 10 Notice or Phillips' motion. Phillips filed another motion on July 18, 2019, requesting that the District Court issue an order holding Bucknum in default for his failure to respond and to set a hearing to determine damages. Specifically, Phillips sought to address Bucknum's failure to make promised and stipulated payments and to execute documents as required by the MPSA.

¶6      On September 27, 2019, the District Court held a hearing on the outstanding motions. Bucknum represented himself and Phillips appeared with counsel. Phillips testified and presented exhibits. Bucknum testified and attempted to introduce a letter from his physician in Victoria, Canada, to explain his condition at the mediation conference and to support his request to withdrawal from the MPSA. The District Court properly excluded it on hearsay grounds. Next, Bucknum wished to have the doctor appear through the court's video conference system; however, Bucknum did not make arrangements to use the system and did not know how to use it. Bucknum did not indicate or request to call remote witnesses through the video conference system at the hearing. The District Court did

4

permit Bucknum to call any witness he wanted to present on his cellphone, but Bucknum chose not to do so. Bucknum then called two witnesses who were present in the courtroom. Ultimately, the District Court heard testimony and admitted exhibits from both parties.

¶7 In the District Court's October 8, 2019 Findings of Fact and Conclusions of Law, and Order, the District Court found Bucknum in contempt for failing to abide by its previous orders relating to the distribution of assets and duties under the MPSA.[1] The District Court concluded that the MPSA was not unconscionable and was binding and enforceable between the parties. The District Court concluded that the Premarital Agreement and the First Amendment to Premarital Agreement were void "to the extent that . . . the MPSA was approved, entered into, and executed by and between the parties and their respective counsel." Among other things, the court specifically ordered Bucknum to transfer certain real property and ownership of vehicles belonging to Phillips in accordance with the MPSA. The District Court ordered Bucknum to pay attorney fees previously ordered and the single maintenance payment agreed upon by the parties. Within 30 days, Bucknum was to pay the parties' taxes. The District Court granted Phillips' motion for attorney fees incurred to enforce the MPSA.

¶8 Bucknum failed to follow any of the District Court's orders. On November 5, 2019, Phillips filed another motion to compel Bucknum to abide by the District Court's orders and instructions and to hold him in contempt for the third time. The District Court held a hearing on Phillips' motion. Bucknum did not appear and the District Court found him in

---

[1] The District Court had previously issued an order on December 24, 2018, holding Bucknum in contempt after violating an economic Temporary Restraining Order between the parties.

contempt of court for failure to abide by the October 8, 2019 order. On November 14, 2019, the District Court entered the Final Decree at issue in this appeal. Phillips received a writ of execution on December 17, 2019, and executed it against Bucknum to recover monies previously awarded. The writ was partially satisfied after Bucknum's bank was levied, but he still has not fully complied with the District Court's orders or instructions regarding compliance with the MPSA.

¶9 The first issue Bucknum raises on appeal is whether the District Court erred in its conclusion of law that the parties' Premarital Agreement and subsequent agreement are void. Bucknum argues that the terms of the Premarital Agreement should be incorporated into the MPSA and the documents should be read together. He maintains that the District Court's failure to do so constitutes prejudicial error, and, when read together, the Premarital Agreement and the MPSA's disposition of property result in no award of attorney fees and no equalization payment to Phillips. We affirm.

¶10 The standard of review of a district court's conclusions of law is whether the conclusions are correct. *In re Marriage of Rada*, 263 Mont. 402, 405, 869 P.2d 254, 255 (1994).

¶11 Montana's public policy promotes "the amicable settlement of disputes between parties to a marriage." *In re Marriage of Wagenman v. Wagenman*, 2016 MT 176, ¶ 14, 384 Mont. 149, 376 P.3d 121 (citing § 40-4-201(1), MCA). "For this reason, parties [to] a marriage dissolution may enter into a written settlement agreement" that governs the disposition of each spouse's property. *Wagenman*, ¶ 14 (citing § 40-4-201, MCA). A district court is bound by the terms of the separation agreement unless the court finds the

6

separation agreement unconscionable. *Wagenman*, ¶ 14 (citations omitted). In other words, a district court may not modify the terms of a settlement agreement absent a finding of unconscionability. *Wagenman*, ¶¶ 14, 17-18; *Hadford v. Hadford*, 194 Mont. 518, 523, 633 P.2d 1181, 1184 (1981) (the conscionability versus unconscionability of a settlement agreement is decided by operation of law when the settlement is approved and merged with the divorce decree). Unconscionability is discussed in the Code Commissioner's comments to § 40-4-201, MCA, where it is defined as including "protection against one-sidedness, oppression, or unfair surprise." Section 40-4-201, MCA, *Annotation*, Comm'rs Note (2013); *In re Marriage of Lawrence*, 197 Mont. 262, 271, 642 P.2d 1043, 1048 (1982). "Terms of [an] agreement set forth in [a] decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." Section 40-4-201(5), MCA. As such, parties to a settlement agreement are bound by the terms of that agreement unless the district court finds the settlement agreement unconscionable.

¶12 The record establishes Bucknum and Phillips both willingly attended the settlement conference on February 15, 2019. The settlement conference was supervised by an experienced settlement master, and both parties were represented by counsel in negotiating the terms of the MPSA. Phillips and Bucknum signed the agreement at the end of the day acknowledging that they "intend[ed] that th[e] agreement be determined by the [District Court] to be fair and equitable and the agreement be incorporated into the Final Decree of Dissolution of marriage . . ." The parties participated in good faith to resolve the outstanding issues between them and reached an agreement in the end. Along with a

7

division of the parties' property, the argument over the validity of the Premarital Agreement and subsequent agreement was resolved by the provisions of the MPSA. The terms of the MPSA indicate that the parties agreed the MPSA was "complete" and contained "all understandings and agreements between the parties with regard to the issues" between the parties. A prior written agreement, such as a premarital agreement, can be modified by a subsequent written agreement, such as a settlement agreement, but modification requires a manifestation of intent by both parties. *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 27, ¶ 29, 362 Mont. 264, 264 P.3d 709. By signing the MPSA, both parties manifested their intent that the MPSA controlled and was a complete resolution of prior disputes.

¶13 We conclude the District Court did not abuse its discretion when it determined the Premarital Agreement was void. The MPSA was enforceable and resolved the dispute over the validity of the Premarital Agreement and the disposition of the property. Because we find the MPSA enforceable, we need not address Bucknum's arguments that the MPSA and the Premarital Agreement, read together, result in no award of attorney fees and no equalization payment to Phillips.

¶14 The second issue Bucknum raises on appeal is whether the District Court erred when it did not continue the final hearing and Bucknum was unable to present his remote witness through the courtroom's video conference system. Bucknum argues the system failed and the District Court should have reset the final hearing.

¶15 "We review a district court's decision to grant or deny a motion for a continuance for abuse of discretion." *In re Marriage of Eslick*, 2013 MT 53, ¶ 10, 369 Mont. 187, 304

8

P.3d 372. "Any motion for a continuance is within the sound discretion of the district court and we will not overrule the court's decision to deny a request for a continuance unless there is an affirmative showing that [the movant] has suffered prejudice." *Eslick*, ¶ 10. "A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial prejudice." *Eslick*, ¶ 10.

¶16 Bucknum argues that his pneumonia made him extremely tired, and the illness and remote nature of the settlement conference led him to misunderstand the legal implications of signing the MPSA on February 15, 2019. Believing the Premarital Agreement was still valid and that he had three days to read and rescind the MPSA if he so chose, Bucknum argues he signed the MPSA without comprehension. To support this argument, Bucknum sought to call his doctor in Victoria, Canada, as a witness at the September 27, 2019 hearing. Bucknum now maintains that the District Court's courtroom equipment and remote hook-up infrastructure failed, and he was prejudiced because his doctor was unable to testify. However, the record does not indicate the court's video conference system was not working. Instead, Bucknum failed to make arrangements to use the system and did not know how to use it. There is no motion or other request in the record indicating that Bucknum planned to call remote witnesses through video conferencing at the hearing. When Bucknum could not operate the teleconference system, the District Court permitted him to call witnesses on the phone, which he chose not to do before calling his two witnesses who were present in the courtroom.

¶17 Bucknum had the burden of presenting his own witnesses and, if necessary, to arrange for them to testify remotely. Alternatively, Bucknum could have called his witness on the phone or moved the court for a continuance, recess, or postponement of the hearing. He took none of these actions. Instead, Bucknum called witnesses who were present and chose not to call his doctor by phone after the District Court granted him permission to do so. Bucknum did not make arrangements to use the teleconference system prior to the hearing, and he did not request a continuance. Because no motion to continue was made, we do not need to address whether Bucknum was prejudiced by a denial of such motion. The District Court did not abuse its discretion when it did not continue the hearing *sua sponte*.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

10