FILED

April 10 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0237

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 80N

IN RE THE MARRIAGE OF:

DANIEL KELLEHER,

      Petitioner and Appellant,

   and

AMBER KELLEHER,

      Respondent, Appellee and Cross-Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DR 07-499B
                  Honorable Katherine R. Curtis, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana
            Mary S. Obermiller, Obermiller Law Firm, Kalispell, Montana

      For Appellee:

            P. Mars Scott, Thorin A. Geist, P. Mars Scott Law Offices, Missoula, Montana


                           Submitted on Briefs:  March 14, 2012
                                    Decided:  April 10, 2012


Filed:

_____
                      Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Daniel and Amber Kelleher (Daniel and Amber, respectively) were married in 1996. During their marriage, they constructed a home and several outbuildings near Kalispell, Montana, known as the Avalanche Ranch ("AR"). AR cost approximately $14 million to build; with approximately $2 million borrowed. In 2007, their marriage ended.

¶3     Daniel and Amber entered into a Marital Property Settlement Agreement (the "Agreement") on March 10, 2008. The Agreement included a provision that neither party was entitled to spousal maintenance. Amber and Daniel also entered into several separate agreements, also on March 10, 2008, which were attached to the Agreement (collectively, the Agreement and all the attached documents will be referred to as the "PSA"). One such agreement provided that Amber and Daniel would share equally in the net proceeds of the sale of AR. Another provided that Daniel would loan Amber $7500 per month as an advance on Amber's portion of the net proceeds of the sale of AR.

¶4     Also attached to the Agreement were trust formation documents for the Avalanche Ranch Trust ("ART"). The ART's sole purpose was to "market and sell" AR. Daniel was initially named Trustee of the ART, and was to "use and occupy the property" and to pay

2

certain expenses. Expenses for AR were approximately $21,000 per month, including the mortgage, taxes, insurance, and maintenance.

¶5    When the PSA was executed, there was a buy-sell agreement in place for AR with a purchase price of $15.5 million. However, the sale did not close. At some point, Amber filed a lis pendens against AR to secure her share of the proceeds of any eventual sale. Finally, in 2009, Daniel accepted an offer of $3 million for AR. Amber refused to remove her lis pendens and the sale did not close.[1]

¶6    Daniel then petitioned the District Court, under M. R. Civ. P. 60(b), to release him from his obligation to pay $7500 per month to Amber and $21,000 per month on AR. Amber also filed a motion seeking reimbursement from Daniel for $155,526 in her living expenses allegedly owed under the PSA, and her attorneys' fees. At a hearing on Daniel's motion, Amber was substituted as Trustee of the ART and the District Court denied Daniel's request to be relieved from the $7500 payments to Amber. It took under advisement Daniel's request to be relieved of the AR expenses. Ten months later, the District Court issued an order denying both Daniel's and Amber's motions. Daniel appeals the denial of his M. R. Civ. P. 60(b) motion. Amber appeals the denial of her motions for living expenses and attorneys' fees.

¶7    Generally, we review the denial of a Rule 60(b) motion for an abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. Construction and interpretation of settlement agreements is a question of law. *In re*

*Marriage of Szafryk*, 2010 MT 90, ¶ 23, 356 Mont. 141, 232 P.3d 361. We review a district court's conclusions of law for correctness. *In re Marriage of Caras*, 2012 MT 25, ¶ 18, 364 Mont. 32, 270 P.3d 48.

¶8 After reviewing the record, we have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issue Daniel appeals is one of judicial discretion and there clearly was not an abuse of discretion. The issues Amber appeals are legal and are controlled by settled Montana law, which the District Court correctly interpreted. The District Court enforced the express terms of Daniel and Amber's PSA, which precluded modification by the court. *See Cortese v. Cortese*, 2008 MT 28, ¶ 9, 341 Mont. 287, 176 P.3d 1064. We disagree with Daniel's characterization that the District Court's orders "forever ensured no sale [of AR] would ever take place." The District Court's refusal to award living expenses to Amber was consistent with the PSA, which stated neither party would receive maintenance. The PSA's provision that Daniel was to meet Amber's day-to-day living expenses was carried out through Daniel's advance payments to Amber of $7500 per month until AR was sold. Finally, the District Court's denial of Amber's attorneys' fees, pursuant to the terms of the PSA, is correct.

¶9 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

---

[1] Daniel and the ART are now being sued by the potential buyer. The potential buyer has also filed a lis pendens against AR.

4

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ BETH BAKER